IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LUMBER LIQUIDATORS, INC.,  )
)
Plaintiff,  )
)
v.  )       Civil Action No. 3:08-CV-573-HEH
)
STONE MOUNTAIN CARPET  )
MILLS, INC., d/b/a THE FLOOR  )
TRADER,  )
)
Defendant.  )

## MEMORANDUM OPINION
### (Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment)

This trademark infringement action is before the Court on separate motions for summary judgment filed by Plaintiff/Counterclaim-Defendant Lumber Liquidators, Inc. ("Lumber Liquidators") and Defendant/Counterclaim-Plaintiff Stone Mountain Carpet Mills, Inc. ("Floor Trader").[1]  Floor Trader seeks summary judgment on all counts of Lumber Liquidators' Complaint, which allege trademark infringement, trade dress infringement, and unfair competition, respectively, by Floor Trader.  Lumber Liquidators, in turn, seeks summary judgment on both counts of Floor Trader's Counterclaim, which ask the Court to cancel a registered trademark owned by Lumber Liquidators.

The parties have filed memoranda of law and extensive exhibits in support of their respective positions.  The Court subsequently permitted supplemental briefing on several

---

[1] "Floor Trader" is a business name commonly used by Stone Mountain Carpet Mills, Inc. and its franchisees.

discrete issues that arose during the discovery process and held a hearing on the parties'

motions. For the reasons detailed herein, Lumber Liquidators' Motion for Summary

Judgment (Dkt. 46) will be granted and Floor Trader's Motion for Summary Judgment

(Dkt. 51) will be denied.

## I.

### A.

Lumber Liquidators is a national company that has sold both pre-finished and

unfinished premium hardwood flooring products since 1994. Currently the largest

individual retailer of hardwood flooring in the United States, Lumber Liquidators also

offers installation services and sells wooden moldings and other home decor products at

over 150 stores throughout the country. A business model "designed to appeal to a

diverse customer base", coupled with Lumber Liquidators' large selection of flooring

products and "everyday low prices", apparently garnered the company over $480 million

in total sales during 2008 alone.

Since beginning operations, Lumber Liquidators has engaged in a large-scale,

nationwide advertising campaign to promote its brand and grow its business. As part of

that campaign, Lumber Liquidators registered at least three related trademarks with the

United States Patent and Trademark Office ("PTO"). The first, "LUMBER

LIQUIDATOR$ HARDWOOD FLOORING FOR LESS!" and related design, U.S.

Registration No. 2,651,590 ("'590 Mark"), was registered on November 19, 2002 and has

since become "incontestable" under 15 U.S.C. § 1065.[2] The second, the word mark "LUMBER LIQUIDATORS", U.S. Registration No. 2,762,656 ("'656 Mark"), was registered on June 17, 2003 and is likewise incontestible as a matter of law. Finally, Lumber Liquidators' third mark, "LUMBER LIQUIDATOR$ HARDWOOD FLOORING FOR LESS!" and design, U.S. Registration No. 3,297,156 ("'156 Mark"), was registered on September 25, 2007.

Lumber Liquidators' '156 Mark—which, though duly registered, has not yet become incontestible under 15 U.S.C. § 1065—is similar to its incontestable '590 Mark, though the '156 Mark further incorporates both a black-and-yellow color scheme and a slanting, diagonal design that the '590 Mark lacks.  To complement its several registered marks, Lumber Liquidators also developed a specific trade dress that adopts a similar yellow-and-black coloring and slanted design elements.  Since 1994, Lumber Liquidators has heavily promoted its brand via a multi-million dollar national advertising campaign that incorporates and uses Lumber Liquidators' several registered marks and trade dress.

Floor Trader, acting through its various franchisees, began competing with Lumber Liquidators in August of 2005 by selling various types of discounted hardwood flooring

---

[2] A trademark's incontestable status under 15 U.S.C. § 1065 constitutes "conclusive evidence of the registrant's exclusive right to use the registered mark".  *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 190 (1985) (internal quotation marks omitted).  Such a mark cannot be challenged by a defendant in a trademark infringement action on the grounds that the mark is merely descriptive and thus not entitled to trademark protection absent proof of a secondary meaning.  *Id.* at 206.  Here, Floor Trader does not seem to dispute that the '590 and '656 Marks have attained incontestible status.

and other products at its franchise retail stores.[3]  Originally based in Missouri, Floor

Trader franchises are now spread throughout the United States, including at least one

store in the Richmond, Virginia area.  In this action, Lumber Liquidators alleges that

Floor Trader competes unfairly, selling similar products and mimicking Lumber

Liquidators' business practices by adopting and copying Lumber Liquidators' registered,

protected trademarks and trade dress for use in Floor Trader's advertising and stores.

Like Lumber Liquidators, Floor Trader advertises heavily, relying on two

registered marks to identify its business and products via store signs and print and internet

advertising.  Floor Trader's first mark, "THE FLOOR TRADER CARPET & FLOORS

from Around the World" and design, U.S. Registration No. 3,232,961 ("'961 Mark"), was

registered on April 24, 2007.  Floor Trader's second mark, "The FLOOR TRADER", and

design, U.S. Registration No. 3,208,937 ("'937 Mark"), was registered on February 13,

2007.  Much like the '156 Mark, Floor Trader's marks incorporate a slanting, diagonal

design together with a black-on-yellow color scheme.

## B.

In its six-count Complaint, Lumber Liquidators alleges that Floor Trader's store

signs, and print, television, and internet advertising infringe on Lumber Liquidators' valid

---

[3] Though Floor Trader initially contended that it began using "The Floor Trader" name and service mark to compete with Lumber Liquidators as early as 2003, it subsequently admitted that it began operation under the Floor Trader name in August of 2005.

and protected '156 Mark (Count I) and trade dress (Count II).[4]  In Count III, the

Complaint further charges Floor Trader with unfair competition in violation of 15 U.S.C.

§ 1125(a).[5]  Floor Trader, in turn, denies infringing on Lumber Liquidators' trademarks

and trade dress and has counterclaimed for cancellation of the '156 Mark, alleging that

the mark is either merely descriptive (Count I) or generic (Count II) and thus not entitled

to trademark protection.

After a protracted discovery process, Lumber Liquidators moved for summary

judgment on both counts of Floor Trader's Counterclaim, arguing that Floor Trader can

present no evidence that the '156 Mark is either merely descriptive or generic.  In

addition to opposing Lumber Liquidators' Motion for Summary Judgment, Floor Trader

now seeks summary judgment on Counts I through III of Lumber Liquidators' Complaint,

contending that neither Lumber Liquidators' registered '156 Mark nor its trade dress are

entitled to protection under federal law.  The parties' motions are now ripe for

disposition.

---

[4] Count IV, alleging federal trademark dilution by Floor Trader, was dismissed with prejudice pursuant to the parties' stipulation.

[5] Counts V, VI, and VII charge Floor Trader with common law trademark infringement, trade dress infringement, and unfair competition, respectively.  The sole argument made by Floor Trader in support of its Motion for Summary Judgment with respect to Counts V, VI, and VII is that this Court should decline to exercise supplemental jurisdiction over these state law claims after it grants Floor Trader summary judgment on all of Lumber Liquidators' federal claims.  As set forth more fully below, however, this Court concludes that Floor Trader is not entitled to summary judgment on Lumber Liquidators' federal claims.  Accordingly, Floor Trader's only argument in support of its Motion for Summary Judgment on Counts V, VI, and VII fails.

## II.

The Court may grant either party's motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted). Mindful of the applicable legal standard, the Court now considers the parties' respective motions for summary judgment in this case.

## III.

Defendant Floor Trader's Counterclaim asks the Court to cancel the '156 Mark on the grounds that it is not entitled to federal trademark protection because the term "Lumber Liquidators" is either merely descriptive of the goods and services offered by Lumber Liquidators, or is instead wholly generic. Classification of a particular mark as generic, descriptive, suggestive, or arbitrary and fanciful references the level of the

6

mark's distinctiveness and thereby determines the amount of legal protection the mark

receives. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (1984).  A mark is not

entitled to trademark protection at all unless it is "distinctive"—that is, "unless it serves

the traditional trademark functions of 'distinguishing the applicant's goods from those of

others.'"  *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004)

(quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

Lumber Liquidators now seeks summary judgment on both counts of the

Counterclaim, arguing that Floor Trader can produce no evidence showing that the phrase

"Lumber Liquidators", as it is used in the '156 Mark, is either merely descriptive or

generic and thus subject to cancellation.  Lumber Liquidators contends that the

undisputed facts demonstrate instead that the term "Lumber Liquidators" is suggestive

and thus entitled to trademark protection absent any proof of secondary meaning.[6]

### A.

Before considering the merits of the parties' arguments, the Court must first

determine the parties' respective burdens at the summary judgment stage with regard to

Floor Trader's Counterclaim for cancellation of the '156 Mark.

---

[6] In support of its Motion for Summary Judgment on the Counterclaim, Lumber Liquidators also relies heavily on *Service Merchandise Co., Inc. v. Service Jewelry Store, Inc.*, 737 F. Supp. 983 (S.D. Tex. 1990).  Though the analysis articulated by the Texas district court in *Service Merchandise* is well reasoned, the case is merely persuasive authority for this Court.  Accordingly, Floor Trader's Counterclaim for cancellation of the '156 Mark is not barred as a matter of law, as Lumber Liquidators suggests.

1.

Classification of a claimed trademark is first considered by the PTO during the registration process. In the present case, Lumber Liquidators did not claim that the '156 Mark was suggestive when it sought registration by the PTO. Instead, Lumber Liquidators chose to seek registration of the '156 Mark pursuant to 15 U.S.C. § 1052(f), which allows an applicant to register an otherwise descriptive mark upon a declaration that it has acquired secondary meaning through previous use in commerce.

The PTO apparently accepted Lumber Liquidators' declaration of acquired secondary meaning through previous use, since the '156 Mark was registered by the PTO, as Floor Trader acknowledges. Registration of the '156 Mark thus constitutes prima facie evidence that the mark is, at a minimum, descriptive and has acquired secondary meaning. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Indeed, Floor Trader conceded at oral argument that it has the burden of demonstrating the invalidity of the '156 Mark. Accordingly, Lumber Liquidators' successful registration of the '156 Mark under Section 1052(f) "shift[s] the burden of proof" to Floor Trader at the summary judgment stage, who now must introduce sufficient evidence to rebut the presumption that the '156 Mark is valid and protectable to obtain cancellation. *Pizzeria Uno*, 747 F.2d at 1529; *Retail Servs., Inc.*, 364 F.3d at 542.

2.

To prevail on summary judgment on the grounds that the '156 Mark is suggestive, and not generic or merely descriptive, Lumber Liquidators has a presumption to

8

overcome at the summary judgment stage as well. Because the distinction between descriptive and suggestive marks is frequently unclear, the Fourth Circuit has noted the importance of giving "due respect" to the PTO's threshold classification of a particular mark. *Pizzeria Uno*, 747 F.2d at 1528. Indeed, when considering the strength or validity of a trademark, the initial classification given to the mark by the PTO "must be considered prima facie correct by a court". *Id.*

Here, the PTO did not have occasion to consider directly whether the '156 Mark itself was descriptive or instead suggestive because Lumber Liquidators sought registration pursuant to Section 1052(f). But the PTO did previously consider two substantially similar marks—the '656 Mark and the '590 Mark—and classified both as descriptive. *See* Annis Decl. Ex. B, C. This Court is bound to consider the PTO's classification of the term "Lumber Liquidators", as it is used in the '656 Mark and the phrase "Lumber Liquidators Hardwood Flooring for Less", as it is used in the '590 Mark as prima facie evidence that the referenced language is descriptive, rather than suggestive. *Pizzeria Uno*, 747 F.2d at 1533. Because the '156 Mark incorporates the exact same terms and design elements as the '590 and '656 Marks—adding only a slanted, diagonal orientation—the presumption of descriptiveness created by the PTO's prior classifications logically applies to the '156 Mark as well.

Moreover, Lumber Liquidators effectively acknowledged that the '156 Mark was descriptive when it sought registration of the mark pursuant to 15 U.S.C. § 1052(f). Lumber Liquidators may, of course, demonstrate that the '156 Mark since has become

9

suggestive. Until such a showing is made, however, the Court must regard the mark as presumptively descriptive.

The PTO's prior determination that the several components of the '156 Mark are descriptive—coupled with Lumber Liquidators' registration of the '156 Mark pursuant to 15 U.S.C. § 1052(f)—thus imposes upon Lumber Liquidators the burden of producing sufficient evidence to overcome the presumption that the '156 Mark is descriptive.[7] *Pizzeria Uno*, 747 F.2d at 1528. With these burdens in mind, the Court now will consider Lumber Liquidators' Motion for Summary Judgment with respect to each count of Floor Trader's Counterclaim in turn.

## B.

Count II of Floor Traders' Counterclaim seeks cancellation of the '156 Mark on the grounds that the term "Lumber Liquidators" is generic. Marks that merely "constitute a common descriptive name" for a particular product or service are generally referred to as "generic". *Park 'N Fly*, 469 U.S. at 194. Generic terms receive no trademark

---

[7] The extension of the PTO's assessment of the '656 and '590 Marks to the '156 Mark is reinforced by the Fourth Circuit's analysis in *U.S. SEARCH, LLC v. U.S. SEARCH.COM Inc.*, 300 F.3d 517 (4th Cir. 2002). In that case, the plaintiff argued that the fact that the PTO registered defendant's trademark, "1-800-U.S. Search", without requiring a showing of secondary meaning also should be accepted as prima facie evidence that the plaintiff's similar, but unregistered mark, "U.S. Search", was suggestive, not descriptive. *Id.* at 524. The Fourth Circuit rejected this argument, explaining: "the distinctiveness of a mark is measured *in connection with the particular goods or services* that are being offered." *Id.* at 524 (emphasis in original). Because the plaintiff and defendant in *U.S. SEARCH* offered distinct services, the Fourth Circuit reasoned, registration of the defendant's mark without proof of secondary meaning was immaterial to a determination of whether plaintiff's similarly worded mark was likewise suggestive. *Id.* In this case, by contrast, all three marks at issue are used by Lumber Liquidators to advertise and promote the exact same goods and services. Accordingly, the PTO's assessment of the distinctiveness—or lack thereof—of the '590 and '656 Marks has a direct bearing on the distinctiveness of the related '156 Mark.

protection, cannot be registered with the PTO, and, if registered, are subject to cancellation at any time. 15. U.S.C. §§ 1052, 1064(c).

As discussed above, registration of a particular mark by the PTO constitutes "prima facie evidence that [a] mark [is] sufficiently distinctive to warrant trademark protection" and therefore is not generic. *Retail Servs., Inc.*, 364 F.3d at 541, 542; *see also* 15. U.S.C. § 1057(b). Here, Floor Trader admits that Lumber Liquidators duly registered the '156 Mark with the PTO on September 3, 2008. *See* Floor Tr. Br. in Op. at 6; *see also* Haskell Decl. Ex. 5. Indeed, Floor Trader conceded at oral argument that it carries the burden of demonstrating the invalidity of the '156 Mark. Absent rebutting evidence, then, registration of the '156 Mark alone would entitle Lumber Liquidators to summary judgment on the issue of whether the '156 Mark is generic and therefore subject to cancellation. *Retail Servs., Inc.*, 364 F.3d at 542; *see also America Online, Inc.*, 243 F.3d at 818.

Floor Trader, however, may overcome the presumption of validity created by the registration of the '156 Mark by "produc[ing] sufficient evidence to establish that the mark is generic by a preponderance of the evidence." *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996). To rebut the '156 Mark's presumption of validity and thereby survive summary judgment, Floor Trader must produce evidence sufficient to: "(1) identify the class of product or service to which use of the mark is relevant; (2) identify the relevant purchasing public of the class of product or service; and (3) prove that the primary significance of the mark to the relevant public is to identify the class of product or service

11

to which the mark relates", rather than to indicate the source of the products or services at issue here. *Id.*; *see also Retail Servs., Inc.*, 364 F.3d at 544.

In the present case, Floor Trader contends that Lumber Liquidators sells not only finished and unfinished hardwood flooring products but also wooden vanities and molding as well.[8] Accordingly, to resolve Lumber Liquidators' Motion with respect to Count II of the Counterclaim, the Court must consider whether Floor Trader can carry its burden of producing sufficient evidence that purchasers of such products would consider the "*primary* significance" of the term "Lumber Liquidators", as it is used in the '156 Mark, to be an indication of the class of the products offered by Lumber Liquidators, rather than an identification of their source. *Retail Servs., Inc.*, 364 F.3d at 544.

To satisfy its burden on summary judgment, Floor Trader may rely on evidence such as "purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications." *Glover*, 74 F.3d at 59. Here, Floor Trader relies

---

[8] Citing the registration materials for the '156 Mark, Floor Trader contends that the relevant class of products referenced by the '156 Mark is actually all "wood products". Floor Trader relies principally on *Octocom Systems, Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937 (Fed. Cir. 1990), to support its argument that this Court may look only to the description of goods and services in the PTO registration materials when identifying the class of products or services to which use of the '156 Mark is relevant. Though the Federal Circuit in *Octocom* did note "that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application", *id.* at 942, the procedural posture of *Octocom Systems* was quite different from this case. *Octocom Systems* considered an initial appeal from the PTO's final decision refusing registration of several trademarks. *See id.* at 938. In the present case, by contrast, the PTO has already evaluated and registered the '156 Mark, which Floor Trader now seeks to cancel via this collateral action. The Trademark Trial and Appeals Board "has consistently held that the defense of 'file wrapper estoppel' is inapplicable in trademark cases". *Watercare Corp. v. Midwesco-Enterprise, Inc.*, 171 U.S.P.Q. 696, 700 (TTAB 1971). Thus, despite Floor Trader's contention, the general product description provided in the '156 Mark's registration materials does not control here, especially when the Court considers the parties' undisputed evidence of the actual goods and services offered in connection with the '156 Mark by Lumber Liquidators.

principally on the dictionary definitions of the terms "lumber" and "liquidators"—which according to Floor Traders mean, respectively, "wood planks or boards" and "one who sells assets for cash"—to demonstrate that the terms in the '156 Mark are nothing more than generic words for the products and services offered by Lumber Liquidators.[9]

But Lumber Liquidators does not merely sell simple wooden planks and boards for cash. Rather, as both parties acknowledge, Lumber Liquidators sells a broad variety of hardwood flooring, vanities, countertops, and moldings for interior walls. The term "lumber" implies an unfinished, rough, or raw product. *See* Webster's New Collegiate Dictionary 709 (9th ed. 1987) (defining lumber as "timber or logs . . . dressed for use" or "various structural materials").  Almost all of Lumber Liquidators' products, by contrast, are refined, processed, and packaged for retail sale to the public.  To call the premium flooring and home decor products offered for sale—and, in certain circumstances, manufactured—by Lumber Liquidators "lumber" would be imprecise, and Floor Trader has offered no evidence that the relevant public uses the term to refer to the types of

---

[9] Floor Trader also argues that Lumber Liquidators itself seems to use the terms generically, since Lumber Liquidators "apparently pays to have the both term [sic] 'Lumber Liquidators,' on its own, and the mark depicted in the '156 [Mark] prominently displayed in connection with the dictionary definitions of the terms 'lumber' and 'liquidate'". Floor Tr. Br. in Opp. at 14.  In support of this argument, Floor Trader contends that a web search for both terms on "Merriam-Webster's Online Dictionary" apparently links to online advertisements for Lumber Liquidators under a heading titled "Ads by Google".  Annis Decl. Ex. D.  The Court may only consider *admissible* evidence at the summary judgment stage. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  Floor Trader, however, has provided no evidence that Lumber Liquidators itself is responsible for the general placement of any advertisements on the "Merriam-Webster's Online Dictionary" website, much less any specific connection between its advertisements and the search terms "lumber" or "liquidate".  The relevance of this evidence is thus questionable, at best. *See* Fed. R. Evid. 401.  Accordingly, the Court will not consider it.

products sold by Lumber Liquidators.

Nor is Lumber Liquidators a "liquidator" in the traditional sense. Though the term "liquidate" can be defined broadly, as Floor Trader notes, to mean "to convert assets to cash", the term's several definitions, on balance, imply an association with indebtedness or other legal liability. *See, e.g.*, Webster's New Collegiate Dictionary 697 (9th ed. 1987) (defining "liquidate" to mean "to determine by agreement or litigation the precise amount of . . . indebtedness, damages, or accounts"). Unlike a court-appointed trustee or receiver responsible for winding up the operations of a defunct business, Lumber Liquidators is actually a thriving manufacturer and retail seller of hardwood flooring and other home decor products and services. No evidence cited by Floor Trader supports a conclusion that the relevant consuming public regards retailers such as Lumber Liquidators as liquidators in the traditional sense.

The dictionary definitions cited by Floor Trader are thus insufficient to satisfy its burden of producing evidence that could prove that the terms "Lumber" and "Liquidators", as they are employed in the duly registered '156 Mark and understood by purchasers of hardwood flooring and other related products, are nothing more than generic terms for the products and services offered by Lumber Liquidators. Accordingly, Lumber Liquidators' Motion for Summary Judgment with respect to Count II of the Counterclaim will be granted and Count II of the Counterclaim, which seeks cancellation of the '156 Mark on the grounds that it is generic, will be dismissed.

## C.

In Count I of its Counterclaim, Floor Trader asks the Court to cancel the '156

Mark because the mark is merely descriptive and lacks secondary meaning. A descriptive

trademark "describes the qualities or characteristics of a good or service" offered by the

mark's holder. *Park 'N Fly*, 469 U.S. at 194. Descriptive marks are entitled to trademark

protection, but "only if the registrant shows that [the descriptive mark] has acquired

secondary meaning, *i.e.* it 'has become distinctive of the applicant's goods in

commerce.'" *Id.* (citing 15 U.S.C. §§ 1052(e), (f)).

### 1.

Lumber Liquidators first contends that it is entitled to summary judgment on Count

I of the Counterclaim because the '156 Mark is actually suggestive, not descriptive. The

Fourth Circuit has noted that the distinction between descriptive and suggestive marks is

a difficult one to draw and is often "made on an intuitive basis, rather than as a result of a

logical analysis susceptible of articulation." *Pizzeria Uno Corp.*, 747 F.2d at 1528

(quoting *Union Carbide Corp. v. Ever-Ready, Inc.*, 188 U.S.P.Q. 623, 638 (7th Cir. 1976)

(internal quotation marks omitted)).

While a mark that "identifies a characteristic or quality of an article or service" is

generally termed descriptive, a mark that instead "suggests, rather than describes, some

characteristic of the goods to which it is applied and requires the consumer to exercise his

imagination to reach a conclusion as to the nature" of the goods offered for sale is instead

classified as suggestive. *Pizzeria Uno Corp.*, 747 F.2d at 1528 (internal quotation marks

omitted). Suggestive marks are entitled to trademark protection even without proof of secondary meaning. *Id.* at 1527.

As noted above, the PTO's previous classification of the language used in the '156 Mark as descriptive requires Lumber Liquidators to produce sufficient evidence to show that the '156 Mark is, in fact, suggestive. *See* Part III.A.2, *supra*. In support of its contention that the '156 Mark is suggestive, Lumber Liquidators relies almost exclusively on a linguistic analysis of the terms "lumber" and "liquidators". Lumber Liquidators argues that the terms, when read together, neither "describe [nor] give reasonably accurate knowledge of [the company's] business or products." Rather, the combined phrase "Lumber Liquidators" provides only a "vague and indirect suggestion of the nature of Lumber Liquidators' business" and is therefore suggestive because it "requires some operation of the imagination to connect it with the goods and services offered" by the company. Lumber Liq. Br. in Supp. at 8; *see also Pizzeria Uno*, 747 F.2d at 1533.

The Fourth Circuit has noted that the introduction of a determination by the PTO that a particular mark is descriptive or suggestive "is generally sufficient to establish a question of material fact that cannot be resolved on summary judgment." *U.S. SEARCH*, 300 F.3d at 524 (citing *America Online*, 243 F.3d at 818). This is precisely the situation presented in the instant case. The PTO previously determined that the language and terms used in the '156 Mark are descriptive.[10] Lumber Liquidators has responded with a

---

[10] Lumber Liquidators apparently recognized the import of the PTO's prior assessments at the registration stage, since it sought to register the '156 Mark under 15 U.S.C. § 1052(f).

16

construction of that same language which, if believed by a trier of fact, could support a finding that the '156 Mark is suggestive, not descriptive, because it requires some operation of the imagination to connect the '156 Mark with the products and services offered by the company. Outstanding issues of material fact thus preclude summary judgment on Count I of Floor Trader's Counterclaim on the grounds that the '156 Mark is suggestive, rather than descriptive.

## 2.

Even if Lumber Liquidators is not entitled to summary judgment on the ground that the '156 Mark is suggestive, the company may still obtain summary judgment on Count I of the Counterclaim if the mark, though descriptive, has acquired secondary meaning. The PTO's prior registration of the '156 Mark constitutes prima facie evidence that it has acquired the secondary meaning necessary for trademark protection. *Retail Servs.*, 364 F.3d at 542; *see also America Online*, 243 F.3d at 816 (noting that a certificate of registration provides the registrant with "prima facie evidence that its mark is not 'merely' descriptive but at a minimum is descriptive *and* has obtained secondary meaning") (emphasis in original). In fact, Floor Trader conceded at oral argument that it bears the burden of demonstrating that the '156 Mark is invalid. Lumber Liquidators is therefore entitled to summary judgment on Count I unless Floor Trader can produce some evidence to rebut the presumption of validity—and secondary meaning—created by the

registration of the '156 Mark.[11]

Secondary meaning is defined as "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *U.S. SEARCH*, 300 F.3d at 525 (citing *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)). It is, in short, the "power of a name . . . to symbolize a particular business." *Perini Corp.*, 915 F.2d at 125 (internal quotation and citations omitted). The Fourth Circuit has identified several factors that are "relevant to, though not dispositive of, the 'secondary meaning' inquiry", including: (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the mark; (6) the length and exclusivity of the mark's use. *Id.* (quoting *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985)).

In the present case, the only evidence offered by Floor Trader to rebut the presumption that the '156 Mark has acquired secondary meaning is a consumer survey conducted by Lumber Liquidators in 2008 ("2008 Brand Survey"). *See* Floor Tr. Br. in Supp. Ex. 4. According to Floor Trader, this survey shows that Lumber Liquidators' marks have "an unaided awareness of a mere 7% of the general population and only 13% unaided awareness of those who have purchased flooring products within a twelve month

---

[11] Floor Trader acknowledged this burden prior to oral argument as well, admitting in its Brief in Support of its Motion for Summary Judgment that "a registration under 15 U.S.C. 1052 §2(f) [sic] is presumed valid". Floor Trader, however, goes on to note correctly that the presumption of validity created by registration can be rebutted by evidence that the mark did not actually acquire distinctiveness. Floor Tr. Br. in Supp. at 10.

period." Floor Tr. Br. in Supp. at 10–11. This exceedingly low brand awareness, Floor Trader contends, effectively rebuts any presumption that the '156 Mark has acquired distinctiveness.

The 2008 Brand Survey, however, proves far less than Floor Trader claims. Floor Trader argues that the 2008 Brand Survey was intended by Lumber Liquidators to "determine its mark awareness". But nothing in the survey indicates that the public's awareness of the '156 Mark—or *any* specific Lumber Liquidators mark, for that matter—was studied. Rather, the 2008 Brand Survey appears to be a general study of the public's awareness of Lumber Liquidators' general "brand position" as a company, not any specific trademarks. *See* Pescara Decl. at 2–3. Because it did not examine—or even reference—the specific mark at issue here, the '156 Mark, the 2008 Brand Survey is irrelevant and therefore insufficient to rebut the presumption that the '156 Mark has acquired secondary meaning.

The Fourth Circuit, of course, has cautioned that the existence of secondary meaning is generally a question for the trier of fact. *U.S. SEARCH*, 300 F.3d at 525. In the present case, however, no disputed question of fact remains for a trier to resolve regarding the existence of secondary meaning. Absent any admissible evidence that the '156 Mark lacks secondary meaning, this Court—and any future trier of fact—is left to consider only the presumption that the '156 Mark is valid and enforceable. Accordingly, Lumber Liquidator's Motion for Summary Judgment with respect to Count I of Floor Trader's Counterclaim will be granted because Floor Trader has failed to rebut the

19

presumption that the duly registered '156 Mark is descriptive and has acquired secondary meaning for the relevant consuming public. Count II of Floor Trader's Counterclaim, which seeks cancellation of the '156 Mark on the grounds that it is merely descriptive and lacks secondary meaning, will be dismissed.

## IV.

In its own Motion for Summary Judgment, Floor Trader asks the Court to dismiss Counts I, II, and III of the Complaint, arguing that Lumber Liquidators' trademarks are invalid and that its trade dress is not entitled to legal protection. Floor Trader further contends that Lumber Liquidators' claim for unfair competition similarly must fail because unfair competition claims "based on trademark and trade dress cannot survive without valid, protectable trademarks and trade dress." The Court will consider Floor Trader's Motion for Summary Judgment with respect to each count in turn.

## A.

Floor Trader first seeks summary judgment on Count I of the Complaint on the ground that Lumber Liquidators' marks are not valid or protectable because they have failed to acquire secondary meaning. Registration of the '156 Mark, however, constitutes prima facie evidence that the mark is, at a minimum, descriptive and has acquired secondary meaning. *America Online*, 243 F.3d at 816. Accordingly, Floor Trader bears the burden of producing sufficient evidence at the summary judgment stage to rebut the presumption that the '156 Mark has acquired secondary meaning and is therefore valid and enforceable. *Pizzeria Uno*, 747 F.2d at 1529; *Retail Servs., Inc.*, 364 F.3d at 542.

As discussed previously, however, the only evidence advanced by Floor Trader on the issue of secondary meaning—the 2008 Brand Survey—is insufficient to rebut the '156 Mark's presumption of validity. *See* Section III.C.2, *supra*. Moreover, both the '656 and '590 Marks are incontestable as a matter of law pursuant to 15 U.S.C. § 1065—Floor Trader therefore cannot challenge either mark on the ground that it lacks secondary meaning.[12] *Park 'N Fly, Inc.*, 469 U.S. at 205. Accordingly, Floor Trader's Motion for Summary Judgment as to Count I of the Complaint will be denied.

## B.

Count II of the Complaint charges Floor Trader with trade dress infringement in violation of Section 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a). Trade dress generally constitutes the "packaging, or dressing, of a product". *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). To prevail in an action for trade dress infringement, a plaintiff, as an initial matter, must show that its trade dress is distinctive and therefore entitled to federal trademark protection. *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 448–49 (4th Cir. 1986). In its Motion for Summary Judgment, Floor

---

[12] The Court notes that although portions of Lumber Liquidators' Complaint allude to multiple trademarks held by the company, the Complaint expressly alleges registration of only the '156 Mark. *See* Compl. ¶¶ 9-10. Further, Lumber Liquidators conceded at oral argument that the Complaint fails to plead explicitly that either the '656 Mark or '590 Mark have been registered by the PTO. Though this action was filed in September of 2008, Lumber Liquidators has made no effort to amend its Complaint to correct this deficiency. Accordingly, it is questionable whether Count I can be construed to state a claim for infringement of the '656 and '590 Marks under 15 U.S.C. § 1114(1)(a). *See* 15 U.S.C. § 1114(1)(a) (providing for liability for infringement of "a registered mark"); *see also Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (noting that "a *registered* trademark holder has a right to prevent another's use of a trademark" under 15 U.S.C. § 1114(1)(1)) (emphasis added). However, since no party has raised this issue, the Court declines to consider it further at this time.

Trader contends that Count II must be dismissed because Lumber Liquidators cannot show that its trade dress has acquired secondary meaning and therefore become valid and protectable under federal trademark law.

1.

Lumber Liquidators first responds that Floor Trader should bear the burden of persuasion on the issue of whether Lumber Liquidators' trade dress has acquired secondary meaning because Floor Trader intentionally copied Lumber Liquidators' trade dress. Sufficient "evidence of intentional direct copying establishes a prima facie case of secondary meaning" and thereby shifts "the burden of persuasion to the defendant on that issue." *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 163 (4th Cir. 1990). Accordingly, Lumber Liquidators need not produce any evidence of the secondary meaning of its trade dress at the summary judgment stage if it can show instead that Floor Trader engaged in intentional copying. *See M. Kramer Mfg*, 783 F.2d at 448–49.

In the present case, Lumber Liquidators frankly acknowledges that it lacks direct evidence that Floor Trader intentionally copied its marks and trade dress. It contends, however, that circumstantial evidence uncovered during discovery is nonetheless sufficient to demonstrate that Floor Trader intentionally copied Lumber Liquidators' marks. The Court disagrees.

Lumber Liquidators' evidence—primarily internal Floor Trader e-mails and other correspondence between 2004 and 2007—invites speculation but ultimately falls short of showing intentional copying by Floor Trader. Rather, Lumber Liquidators' evidence

22

suggests, at best, that Floor Trader executives were aware of and interested in the marketing and business practices of Lumber Liquidators during this time period. Such awareness and interest in a competitor is not atypical for a new company. Moreover, the actions of Floor Trader in this case are readily distinguishable from other scenarios where courts have found sufficient evidence of intentional copying to shift the burden of persuasion on the issue of secondary meaning. *See, e.g., Osem Food Indus.*, 917 F.2d at 163 n.4 (shifting burden where the defendant admitted to direct and intentional copying of the plaintiff's trade dress); *Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 149 (4th Cir. 1998) (finding sufficient evidence of intentional copying where the evidence "clearly" showed that defendant admitted to copying plaintiff's products directly and selling them using plaintiff's *exact* marks and dress). Accordingly, the burden remains with Lumber Liquidators to demonstrate that its trade dress has acquired secondary meaning.

2.

In the alternative, Lumber Liquidators argues that it has produced ample evidence that its trade dress has acquired secondary meaning, regardless of which party bears the burden of persuasion on the issue. To determine whether trade dress has acquired secondary meaning, "courts will consider a variety of factors including (1) the length and exclusivity of the trade dress; (2) the amount of advertising expenditures promoting the product; (3) the degree of unsolicited media coverage for the product; (4) sales volume and success; and (5) the extent to which the product's appearance has achieved identity in the minds of the purchasing public." *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*,

23

26 F.Supp.2d 834, 850–51 (E.D. Va. 1998) (citing *Perini*, 915 F.2d at 125–26). Further,

Lumber Liquidators must show that its trade dress acquired distinctiveness prior to Floor

Trader's entry into the market—that is, August of 2005, according to Floor Traders.

Floor Tr. Reb. Br. in Supp. at 15; *Perini Corp.*, 915 F.2d at 125–26.

In the present case, Lumber Liquidators has presented evidence demonstrating that

most, if not all, of the several relevant factors support a finding that its trade dress has

acquired secondary meaning. For example: Lumber Liquidators has employed its black-

and-yellow color scheme for over a decade, during which time the company has invested

nearly $200 million in local and national advertising that incorporates its trade dress and

marks. *See* Pescara Decl. at 1–2. This advertising campaign seems to have borne fruit:

Lumber Liquidators' evidence indicates that its sales volume steadily increased each year

from a mere $35 million in 2001 to over $480 million in 2008. *Id.* at 2. Though it does

not provide specific examples, a Lumber Liquidators executive has submitted an affidavit

indicating that the company has received unsolicited media attention in an number of

articles as well. *Id.*

In short, Lumber Liquidators has come forward with sufficient evidence to avoid

summary judgment on the issue of whether its trade dress acquired secondary meaning

prior to Floor Trader's entry into the market in August of 2005. Moreover, the Fourth

Circuit has noted that the issue of whether a company's trademark or trade dress has

acquired secondary meaning is generally a question for the trier of fact. *U.S. SEARCH*,

300 F.3d at 525. Accordingly, Floor Trader's Motion for Summary Judgment with

24

respect to Count II of the Complaint must be denied.

## C.

Finally, Floor Trader seeks summary judgment on Count III of Lumber Liquidators' Complaint, which charges Floor Trader with unfair competition in violation of Section 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a). As Lumber Liquidators notes, however, Floor Trader's only argument in support of its Motion for Summary Judgment on Count III is that Lumber Liquidators' federal unfair competition claim cannot survive absent valid, protectable trademarks and trade dress. *See* Lumber Liq. Br. in Opp. at 18 n.9.

The Court previously determined that the '156 Mark was valid and enforceable. *See* Section III.C.2, *supra*. Nor does Floor Trader seem to contest that the '590 Mark or the '656 Marks have become incontestable under 15 U.S.C. § 1065 and thus valid and enforceable as well.[13] Moreover, the Court previously found that genuine issues of material fact as to whether Lumber Liquidators' trade dress has acquired secondary meaning preclude summary judgment in favor of Floor Trader on Count II. *See* Part IV.C.2, *supra*. Accordingly, Floor Trader's Motion for Summary Judgment on Count III must be denied as well.

---

[13] Of course, Lumber Liquidators' failure to allege registration of the '656 Mark and the '590 Mark means that it is questionable whether either can support a cause of action for trademark infringement under Section 32(1)(a) of the Lanham Act in this case. But nothing prevents these incontestable marks from serving as the basis for an unfair competition cause of action in violation of Section 43(a) of the Lanham Act. *See Microstrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 341 (4th Cir. 2001) (analogizing Section 43(a) of the Lanham Act to "classic principles" of unfair competition law and noting that Section 43(a) does not require that a mark be registered to obtain protection).

## V.

For the foregoing reasons, the Court will grant Lumber Liquidators' Motion for Summary Judgment on Counts I and II of Floor Trader's Counterclaim and will deny Floor Trader's Motion for Summary Judgment on all counts of Lumber Liquidators' Complaint.

An appropriate Order will accompany this Memorandum Opinion.


                                                    /s/
                                          Henry E. Hudson
                                          United States District Judge


ENTERED this _10th_ day of _July_____, 2009.
Richmond, VA.

26